UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICK PLUMLEY, <br><br> Plaintiff, <br><br> v. <br><br> BROADWAY FINANCIAL CORPORATION, VIRGIL ROBERTS, DANIEL A. MEDINA, WAYNE-KENT A. BRADSHAW, ERIN SELLECK, ROBERT C. DAVIDSON, JR., DUTCH C. ROSS III, and JACK T. THOMPSON, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Patrick Plumley ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Broadway Financial Corporation ("Broadway" or the "Company") and the members of Broadway's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on the proposed acquisition of the company by CFBanc Corporation ("CFBanc") (the "Proposed Transaction").

2. On August 26, 2020, Broadway and CFBanc jointly announced their entry into an Agreement and Plan of Merger dated August 25, 2020 (as amended on January 14, 2021, the "Merger Agreement"). That agreement provides that CFBanc shareholders will receive 13.626

shares of Broadway common stock for each CFBanc share they own. Upon closing of the merger, CFBanc stockholders are expected to own approximately 47.5% of the combined company's stock, while Broadway stockholders are expected to own approximately 52.5%.

3. On February 11, 2021, Broadway filed a Form 424B3 Prospectus ("Prospectus") with the SEC. The Prospectus, which recommends that Broadway stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (a) the projections for each of Broadway and CFBanc and estimates regarding certain pro forma financial effects of the Proposed Transaction on Broadway utilized by Keefe, Bruyette & Woods, Inc. ("KBW") in its financial analyses; (b) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor KBW; and (c) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Broadway stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Broadway.

10. Defendant Broadway is a Delaware corporation with its principal executive offices located at 5055 Wilshire Boulevard, Suite 500, Los Angeles, California 90036. Broadway is a savings and loan holding company that conducts its business operations primarily through its wholly-owned banking subsidiary, Broadway Federal Bank, f.s.b. ("Broadway Federal Bank"). Broadway's shares trade on the Nasdaq Capital Market under the ticker symbol "BYFC."

11. Defendant Virgil Roberts ("Roberts") is Chairman of the Board and has been a director of the Company since 2002.

12. Defendant Daniel A. Medina ("Medina") has been a director of the Company since 1997.

13. Defendant Wayne-Kent A. Bradshaw ("Bradshaw") has been the Company's President since February 2009, Chief Executive Officer ("CEO") since January 2012, and a director since September 2012. Defendant Bradshaw previous served as the Company's Chief Operating Officer beginning in February 2009.

14. Defendant Erin Selleck ("Selleck") has been a director of the Company since 2015.

15. Defendant Robert C. Davidson, Jr.("Davidson") has been a director of the Company since 2003.

16. Defendant Dutch C. Ross III ("Ross") has been a director of the Company since 2016.

17. Defendant Jack T. Thompson ("Thompson") has been a director of the Company since 2019.

18. Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

19. Non-party CFBanc is a District of Columbia corporation with its principal executive offices located at 1432 U Street, N.W., Washington, D.C. 20009. CFBanc is a bank holding company that conducts its business operations through its wholly-owned subsidiary, City First Bank of D.C., National Association ("City First Bank") and through certain other subsidiaries and affiliates.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On August 26, 2020, Broadway and CFBanc jointly announced:

WASHINGTON & LOS ANGELES--CFBanc Corporation ("City First") in Washington, DC and Broadway Financial Corporation ("Broadway," Nasdaq: BYFC) in Los Angeles, CA announced today that they have entered into a transformational Merger of Equals agreement to create the largest Black-led

Minority Depository Institution (MDI) in the nation with more than $1 billion in combined assets under management and approximately $850 million in total depository institution assets (as of June 30, 2020). Combining the two institutions will increase their collective commercial lending capacity for investments in multifamily affordable housing, small businesses, and nonprofit development in financially underserved urban areas, while creating a national platform for impact investors.

City First Bank of D.C., National Association ("City First Bank," a City First subsidiary) and Broadway Federal Bank, f.s.b. ("Broadway Federal Bank," a Broadway subsidiary) each hold a strong financial position as Community Development Financial Institutions (CDFIs), and have a longstanding history of advancing economic and social equity through the provision of capital in low- to moderate-income communities. The combined institution will maintain its CDFI status, requiring it to deploy at least 60% of its lending into low- to moderate-income communities. CDFIs help to close funding gaps, create jobs, expand critical social services and spur equitable economic development with a mission to strengthen the overall well-being of vulnerable communities. Since the beginning of 2015, City First Bank and Broadway Federal Bank have collectively deployed over $1.1 billion combined in loans and investments in their communities (as of June 30, 2020).

"Given the compounding factors of a global pandemic, unprecedented unemployment and social unrest resulting from centuries of inequities, the work of CDFIs has never been more urgent and necessary," said Brian E. Argrett, President and CEO of City First Bank and the Vice Chair and CEO of the new combined institution. "As part of this historic merger, we are demonstrating that thriving urban neighborhoods are viable markets that require a dedicated focus, long-term commitment and critical access to capital."

The combined nine-member board will be composed of five directors from City First and four from Broadway. Broadway's president and CEO Wayne-Kent A. Bradshaw will lead the board of the combined institution as its chair. City First board chair Marie C. Johns will serve as the institution's lead independent director.

"The new combined institution will strengthen our position and will help drive both sustainable economic growth and societal returns," said Mr. Bradshaw. "We envision building stronger profitability and creating a multiplier effect of capital availability for our customers and for the communities we serve."

The new institution will maintain bi-coastal headquarters and will continue to serve and expand in the banks' current geographic areas, with a desire to scale to other high-potential urban markets. As a national bank, the combined entity intends to continue to operate under the supervision of the Office of the Comptroller of the Currency (OCC) and to be listed on the Nasdaq Capital Market. As a Community Development Financial Institution (CDFI), a Minority Depository Institution (MDI), a Benefit Corporation and a member of the Global Alliance of Banking on

Values, the new institution intends to continue to firmly anchor its work, results and values in the rapidly expanding field of social finance and accretive stakeholder benefits.

Under the terms of the merger agreement, which was unanimously approved by the boards of directors of both City First and Broadway, City First will merge with and into Broadway, with Broadway as the surviving corporation. Broadway Federal Bank, the wholly owned subsidiary of Broadway, will merge with and into City First Bank, the wholly owned subsidiary of City First, with City First Bank as the surviving bank. At the closing of the merger, City First common shareholders will receive 13.626 shares of Broadway common stock for each share of City First common stock they own, resulting in Broadway stockholders owning 52.5% and City First shareholders owning 47.5% of the combined institution.

The merger is expected to close in the first quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of necessary regulatory approvals and approval by the shareholders of each company.

**The Prospectus Contains Material Misstatements or Omissions**

21.     The Prospectus was furnished to Company stockholders to solicit their votes in favor of the Proposed Transaction.  The Prospectus, however, misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of that deal.  As such, the Prospectus has been issued in violation of Sections 14(a) and 20(a) of the Exchange Act.  The Individual Defendants, moreover, were obligated to carefully review the Prospectus before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  They failed to do so.

22.     As set forth herein, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (a) the projections for each of Broadway and CFBanc and estimates regarding certain pro forma financial effects of the Proposed Transaction on Broadway utilized by KBW in its financial analyses; (b) the data and inputs underlying the financial valuation analyses that support

the fairness opinion provided by the Company's financial advisor KBW; and (c) the background of the Proposed Transaction.

***Material Omissions Concerning Broadway's and CFBanc's Financial Projections and the Pro Forma Financial Effects of the Proposed Transaction on Broadway***

23. The Prospectus fails to disclose material information regarding Broadway's and CFBanc's financial projections and estimates regarding certain pro forma financial effects of the Proposed Transaction on Broadway relied upon by KBW for its analyses.

24. The Prospectus, for example, fails to disclose the estimated excess cash flows for Broadway and CFBanc, for the 5.5-year period from the end of the second quarter of 2020 through 2025, utilized by KBW in its respective discounted cash flow analyses.

25. The Prospectus at page 69 also expressly indicates that in connection with its fairness opinion, KBW considered and relied upon certain management prepared forecasts "regarding certain pro forma financial effects of the merger on Broadway." The Prospectus fails, however, to disclose the "estimates regarding certain pro forma financial effects of the merger on Broadway (including without limitation the cost savings, revenue enhancements and related expenses expected to result or be derived from the merger)." *Id.*

26. The failure to include this information violates the Exchange Act and renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Broadway's Financial Advisor" sections of the Prospectus false and/or materially misleading.

***Material Omissions Concerning KBW's Financial Analyses***

27. The Prospectus describes KBW's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of that fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, the Company's public stockholders are unable to fully

understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

28. With respect to KBW's *Selected Companies Analysis*, the Prospectus fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by KBW.

29. With respect to KBW's *Pro Forma Financial Impact Analysis*, the Prospectus fails to disclose: (a) the specific accretion/dilution figures resulting from the analysis; (b) the pro forma assumptions (including, without limitation, the cost savings, revenue enhancements and related expenses expected to result from the merger as well as certain purchase accounting adjustments and restructuring charges assumed with respect thereto) provided by Broadway management; (c) Broadway's estimated tangible book value per share at closing as of December 31, 2020; and (d) Broadway's tangible common equity to tangible assets ratio, Common Equity Tier 1 Ratio, Leverage Ratio, Tier 1 Risk-Based Capital Ratio and Total Risk-Based Capital Ratio at closing as of December 31, 2020.

30. With respect to KBW's *Broadway Discounted Cash Flow Analysis*, the Prospectus fails to disclose: (a) the estimated excess cash flows that Broadway could generate over the 5.5-year period from the end of the second quarter of 2020 through 2025; (b) quantification of Broadway's terminal value; and (c) quantification of the inputs and assumptions underlying the discount rates ranging from 13.0% to 17.0%.

31. With respect to KBW's *CFBanc Discounted Cash Flow Analysis*, the Prospectus fails to disclose: (a) the estimated excess cash flows that CFBanc could generate over the 5.5-year period from the end of the second quarter of 2020 through 2025; (b) quantification of CFBanc's terminal value; and (c) quantification of the inputs and assumptions underlying the discount rates ranging from 13.0% to 17.0%.

32. Without such undisclosed information, Broadway stockholders cannot evaluate for themselves whether the financial analyses performed by KBW were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which KBW's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

33. The omission of this information renders the statements in the "Opinion of Broadway's Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

34. The Prospectus fails to disclose material information relating to the background process leading to the Proposed Transaction, including whether any of the eight confidentiality agreements Broadway entered into throughout the sale process include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any potential counterparties from submitting a topping bid for the Company.

35. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if

action has been done, is omitted from the Registration Statement.

36. Any reasonable Broadway stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

37. The omission of this information renders the statements in the "Background of the Merger" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

38. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Broadway will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

39. Plaintiff repeats all previous allegations as if set forth fully herein.

40. During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus. The Prospectus was

prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction, the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Transaction Committee's financial advisor, KBW. The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of Seneca within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of KBW, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Prospectus.

49.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act. As a direct and proximate result of defendants' conduct, Seneca stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

  A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 25, 2021  **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*